In Re Grand Jury Subpoena Number 13-1237, Messrs. Kaminsky and Lachine on the appellant side, and Ms. Morgan for the government. Whenever you're ready. Good morning, Your Honor. I'm Kaminsky. I'm representing the corporation. Ms. Lachine is representing the individual client today. I'm going to refer to the corporation as the corporation. I'm going to refer to the attorney involved in this grand jury matter as simply the attorney, and refer to the client as simply the client if that, if it becomes appropriate. We're here on an appeal from a district court order from January of 2013. Thank you, Your Honor. There were several issues of first impression before the court. I'm going to try to focus on two of the issues today. By the way, did you ask for any time for rebuttal by the court? Oh, yes. There's three minutes for rebuttal. That's fine. And that's the way the clock was set up, Your Honor. That's fine. I'm going to try to focus on two of the issues today, and leave the other ones for my brief unless we pick it up and rebuttal all the courthouse questions. The issues are the procedure that should have been adopted in connection with this grand jury proceeding when live testimony was being obtained by way of an attorney in order to attempt to vitiate, and the court did order it vitiated by way of the crime fraud exception and the attorney-client privilege. We think the district court judge got it wrong in terms of the procedure. Both the appellants and the government in the lower court suggested that both parties be present. The government suggested both parties be present at the interrogation or the interviewing of the attorney, however you want to phrase it. We suggested that just we be present in order to preserve the privilege, but the government actually suggested both parties be present and the government would be present with a position which it did not argue for below to defend the district court judge and actually decided to handle it. When I started to prepare for today, I'm in the unenviable position of the government makes an ex parte submission, I don't have it. The government interviews an attorney, I'm not there for the interview. The government, there's a transcript of the interview, I don't have the transcript of the interview, and I'm trying to argue that the crime fraud exception does not apply. It seems to us even in the grand jury setting there has to be more balance. When you start with the court's most recent case in 705 F. 3rd in red grand jury, that all you need is a reasonable basis to suspect, and that's all that's required to breach the privilege in the crime fraud setting in the circuit, that the defense has to be, in this case they're targets, the defense has to be given some opportunity to have some information in order to respond. It's too easy to simply say speak to your client, ask him what he knows about the transaction, because this is five years ago. The problem that we have here is that if it's a grand jury, you're not in the grand jury room, and grand jury proceedings are supposedly secret. There's got to be a balance here. In effect, is not the attorney telling the judge something that would be said in the grand jury room? Yes, except we never have understood based on this Court's precedence that we cited like Catania and the other historical Third Circuit cases. The Third Circuit case law in grand jury secrecy is information which occurs before the grand jury. We're asking questions here. The Court specifically noted that we had phrased the questions and they had phrased the questions that were substantially the same. Well, we don't know what their questions are, but we know what our questions were. Our questions were what happened? There were six questions which basically asked what happened. Did you consult with the client on this transaction? If so, where did it occur? When did it occur? What did the client consult with you about? Did you respond? Did you give advice? How did the client react to the advice? We have never understood that to be grand jury information under any of the Court's precedence. We have never understood a witness's preexisting knowledge to be grand jury information under any of the precedence. And therefore, we did not understand the Court's ruling in this regard that we were previewing grand jury testimony, especially in light of the questions which were posed. Now, if the Court put in different questions, her opinion said there was a combination of the government's and our questions, the appellant's questions. If the judge put in different questions, then maybe there's an impact of some grand jury information, but it could have been redacted. But to ask the appellants in this case to react and to argue against crime fraud, we ended up giving a hypothetical, as the Court knows. And it may not have been a correct hypothetical. But based on the fact that we don't have, you're talking historical information from five years ago. You're talking about a proceeding where the appellants have no information. So we didn't see it as grand jury information at all. We don't see it as a preview because preexisting information isn't grand jury information. Rule 6E has never covered information from a witness. The witness can walk into the grand jury. The attorney can walk into this grand jury and come out and talk to us the minute he gets out without violating grand jury secrecy. So we never understood it as coming within Rule 6E. We never understood it as a preview. We always viewed it as preexisting information. And we didn't understand where the Court came from in that, you know, in that regard in saying she had to protect grand jury secrecy. Second, based on the historical case law, there's only one case that really dealt with this in the Second Circuit. And that case noted that the dynamics might be different. That's the Second Circuit Enraged John Doe case. The dynamics might be different if grand jury secrecy, the need for it wasn't as serious or as urgent. Here, there was a lesser need for grand jury secrecy. The government admitted that. There is a historical proceeding. There is something going on offshore. And you didn't have the same need for grand jury secrecy. So we coupled that with, you have the historical knowledge we don't think is secret at all. You have a lesser need for grand jury secrecy. You have the Seventh Circuit case we cited, which we grant is in a post-indictment context, where the Circuit Court in that case said it would be an unusual proceeding. So what are you suggesting should have been done? Initially, you opposed the in-camera review. Is that correct? Yes, that's correct. Are you still trying to suggest that the in-camera review should not have been done or that you should have been provided a transcript of what took place between the? For purposes of remand, we think at this point so much has happened that we ask that we be provided with a transcript and we could submit any additional questions as appropriate. If the court was writing on a clean slate, we would think that we should be present. The appellant should have been present at the initial question. We don't have to ask questions just to sit there and see if the judge missed something which was critical, which takes me to my other critical point, which is the in-furtherance problem. The court did not really deal with that. Before you get to in-furtherance, Mr. Kaminsky, your argument in your briefing, although you haven't yet mentioned it here today, heavily emphasizes the verbal aspect of the testimony and distinguishes it from documentary evidence. Why should we not extend the Zolan standard to verbal communications? I'm not sure I appreciate as much as you would like me to the distinction between the documentary communications and the verbal communications. Look, the courts have over the years, as you know, and we just start from a different angle, have distinguished between and have commented upon the dangers of eyewitness testimony and how people forget and remember different things over time. What you have here is a five-year gap between whenever this interaction was and when the testimony is being solicited by the disrecording camera. So it is different than a document. And in a document, the appellants could react to a document. You can look at the document. Is it privileged? What may it mean? You at least know what you're fighting against for due process purposes. For live testimony, you don't. What would be the consequences of suggesting that there is a more stringent standard for oral testimony vis-à-vis documents? We think it would aid the administration of justice. We don't see any significant downside of having a different standard or having a heightened standard. Would it incentivize clients to attempt to abuse the privilege to avoid leaving a documentary or a paper trail? We don't see that. Look, 95% of the cases are documents. People create documents. They create them by hand. They create them on a computer. That's the way the world is. We don't think that would change if the court adopted a heightened standard to recognize the difference between written documents and oral testimony, where the recollection can change over time. But, well, I mean, look, people testify at trials and recollections change over time. But it seems to me we're on a slippery slope if we start saying that oral testimony is to be given a more stringent standard than what is currently in place with regard to documents. Look, we obviously disagree, but at least we should have some input. We disagree. I understand you disagree, but why? Because, again, our view is documents have closed content. And there is something from a due process standpoint that you can respond to something that has closed content, and when you're fighting crime fraud and trying to argue that the crime fraud exception doesn't apply, you have something you can argue about or against. Are you always going to know what the document says? Aren't some of these documents going to be reviewed in camera by the court? Of course, but they're going to be our documents. We're claiming privilege. So it's our documents which always go to the court. So we know what the document says. Well, wait, who? That's the royal hour. I mean, here they might be the lawyer's documents, and maybe the client has no ongoing relationship with the lawyer, right? Maybe it's debatable as to whether they're possession of the lawyer. That's not unfair. Normally if the client's documents, as the court decided in the last case, the client is an agent for the lawyer's right to see his documents again. And I think we went through that ground in the December opinion. So if that's true, you're going to have the documents, you're going to have access to the documents, and therefore it is different than just live testimony based on memory of something that occurred in this case five years ago. Yeah, I accept your distinction on that, but at the same time, the testimony that the court is hearing in camera is the conversation between the attorney and your client. You certainly know what that conversation was from your client. But that's not, forgive me, Your Honor, that's not how the system is supposed to work. It's like walking into the U.S. Attorney's Office in an investigation, and you say, what are the facts, and you say, talk to your client. You may not have the same view from your client or the same position from your client as what the lawyer is saying, and especially when the lawyer is remembering something, one, from five years ago, two, pursuant to a grand jury subpoena, three, sitting with a district court. So are you saying the only thing that really distinguishes, all right, you know, we have Zola. The Supreme Court spoke in Zola. You're saying that time is a distinction here and that the fact that it's an oral statement as opposed to a document is a distinction. Yes, live testimony versus a document. Let me at least touch upon the in-furtherance issue before I run out of time because I'm running out of time. The in-furtherance question was not resolved and needs to be clarified in our view after the In re Grand Jury case last December. The court did not, by the way, and the court, and also in my view, needs to further differentiate between the first step Zola analysis and the second step reasonable basis to suspect. The U.S. The government has already taken the position in the cert petition that the first prong is simply useful now. That's what you need for Zola and prong one. So when you get to, if I could go for another 15 seconds, Your Honor. No, right ahead. Thank you. So if you're dealing with in-furtherance, we set up a hypothetical where the advice was correct and the client didn't listen to it. And there's three circuits which say if the advice is correct and the client doesn't follow it, you're not using the lawyer in-furtherance. The issue of what is in-furtherance needs to be elaborated on by this court. And I can give you a second hypothetical. Say the lawyer isn't as good and he gives the advice, but he doesn't give all the advice. Well, FCPA 101 is you can't make a direct payment. And in the court's opinion, it talks about an indirect payment. FCPA 101.1 is you can't make an indirect payment. So if this was not elicited in camera and the questioning of the attorney, it should have been. And if we were there or we had the transcript, we could have asked if that question was asked. Different hypothetical. Say now instead of the advice is correct and the client doesn't listen to it, the advice is incorrect and the client follows it. Under the government's theory as we see it, no matter what the lawyer is consulted for, no matter what advice is given, whether the advice is right or the advice is wrong, if the government believes a crime occurs thereafter, you have crime fraud. It can't be that broad. Based on a reasonable basis of spec standard and based on that kind of a reading of in-furtherance, you're going to have crime fraud in every case. We found a statistic we put in a pending cert petition, and in the mid-90s, 30% of the cases the government was getting crime fraud findings. Based on this court's ruling last December, and without taking a stand on in-furtherance, you're going to have crime fraud in a vast majority, 80%, 90% of the cases. What was said in the case last, in the example that you just gave, what was said in the case last year? Nothing on that point. Nothing on that point. It simply said it had to be in-furtherance. So what you're suggesting is that we need to make sure that we clarify that the crime fraud exception, the in-furtherance provision, doesn't apply to the hypotheticals that you have just given. Yes, Your Honor. Okay, let me stop here. I'm sorry, Your Honor. Yes, sir? If I can. Sure, go right ahead. Absolutely. Let's suppose the client just goes in and says, just tell me what the law is on the FCPA. Just tell me what the law is. What's the law say? Explain it to me. If the lawyer has... In the lawyer, the attorney, because you gave two examples, the attorney gives an appropriate and correct explanation of the law. The client says, thank you, Mr. Counselor, and goes out and commits a crime. We don't see that as in-furtherance. In three circuits, we cited the D.C. Circuit, a Second Circuit case, and a Ninth Circuit case, all say that that is not in-furtherance. You have to use the advice to concoct the crime. If you ignore the lawyer's advice, if the lawyer had given advice that you can't do direct or indirect payments, and the government's position is you can do it... I'm sorry. I think what you just said is hard to reconcile with our decision in In Re Grand Jury from 06. Because didn't we say in that case that if the client intends to gain meaningful information that the client may use to skirt the law, which I think goes to Judge Fischer's hypothetical, the client sought and gained meaningful information and used that to skirt the law. You remember the facts of that case about deleting the e-mails. The client goes to the lawyer. The lawyer says, oh, the government may be interested in this, that, and the other thing. And the client goes and deletes those types of e-mails. By the way, we never understood that as legal advice. That was just an... In our view, that case was about the data, what was in the subpoena, and they didn't even get the legal advice, in our view. But leave that aside. We don't think the December opinion, which is what I was talking about, the last December opinion, reached that issue. It simply said that infurtherance means infurtherance. I'm not saying we did reach it. I'm saying how do you reconcile the argument you just made with our decision in 2006? Oh, because I don't see that as a legal advice opinion. It was not information about the laws as I read that opinion. It was simply that the lawyer said there's a subpoena outstanding, and then the client went and destroyed e-mails. I don't see that as dealing with infurtherance, as dealing with this prong of the infurtherance rule at all, because you don't have legal advice being given. The way the opinion reads, that opinion reads, it doesn't say you can't destroy documents, you have to keep documents, you should preserve documents. None of that's there in the written opinion. What you have here is, assuming appropriate advice was given, if any time you go to a lawyer and he gives appropriate advice and the advice is not followed, I don't think that's infurtherance. And, again, the D.C. Circuit has said that, the Ninth Circuit has said that, and the Second Circuit has said that. The Ninth Circuit case was bankruptcy fraud. The lawyer went in and said you have to have everything accurate on your filings. The client didn't do it. This is the Bower case? That's the Bower case. And the client didn't do it. And there's a D.C. Circuit case where the same thing. The lawyer said you can't, if you get the approval of the supervisor, you still can't make a case. Now, what was your Second Circuit case? It wasn't Richard Roe, was it? No, it was the Jacobs case. Now, they eventually found, they eventually found crime fraud there because they said that the lawyer's advice, which was don't do it, was not followed and the client was running around telling people it's okay to do this. It's okay to go into this tax scheme. But there are three different cases which say if you're ignoring the advice, it's not infurtherance. Otherwise, every time a lawyer has consulted Judge Hardiman, you're going to have crime fraud. Every government investigation, you're going to have crime fraud. We don't think that's the appropriate resolution for the criminal justice system. Thank you. Okay, thank you. Mr. Lechine, did you want to? The way I understood it, Your Honor, is that I would have the rebuttal. Oh, I got it. I was going to make a remark. No, that's fine. That's fine. Great. Ms. Morgan? Thank you, members of the panel. Good morning. With respect to the first argument that Mr. Kaminsky made, the court did use the proper procedure in this case by conducting an in-camera examination of the attorney. And it's the government's position that there is no distinction between examining documents versus examining an attorney. This was standard operating procedure and perfectly ordinary. The court had to establish a factual basis to support a good faith belief by a reasonable person that the in-camera review would reveal sufficient evidence to show the crime fraud exception applied, and that is what the court did here. And it is the government's view that if we were to follow the appellant's position, that would, in fact, insulate verbal communications between an attorney and a client. What the court did here was treat these verbal communications just as the court would treat documents. The government provided questions to guide the court in its examination, and the appellants provided questions to guide the court in its examination. Let's go to the second argument that Mr. Kaminsky made, and that's the in-furtherance argument. And let's run through a series of hypotheticals. We start with the one where the client goes to the attorney to disclose what assets does he have to disclose in bankruptcy. And the attorney says, got to disclose everything. Disclose all your assets. The client goes out and deliberately does not do that. And what happens there? The client, the test is really client-centric. So in that case, the client is intending to commit a crime, and the client acts in furtherance of the crime after receiving advice from the attorney. So that's the same situation that this court had in the 2006. I'm not sure if it was 2006. 2006 is where somebody, they were trying to find out what the government was looking for, and then they went and said to one of the employees, wipe the computer. And the employee came back and said, it's all wiped. And the government comes in and, of course, it isn't. And that's very different than this. The example I just gave you, you think that's in-furtherance of, and yet that's a case where the Ninth Circuit said it is not in-furtherance of. I believe that if we look at this court's precedent in 2006 and the Fifth  what we end up with is really that whether the attorney provides advice suggesting go commit a crime, whether the attorney provides advice do not go commit a crime, or whether the attorney's advice is neutral, as it was with. We'll get to the consequences of that, because it seems to me that there are significant impediments to people consulting with their attorneys if we follow the route you're suggesting. But the first hypothetical I gave you was from Bauer. The second is that the campaign finance law, you go and you ask what can be done with regard to campaign finance laws. The attorney gives you the information and says you can do this, you can't do that, and you go out and you commit a crime. Is that in-furtherance of? If the client is using that information to inform his actions, then he's acting in-furtherance of a crime. But the D.C. Circuit disagreed with you on that in Ray Seale's case. I understand that, Judge. And so is there – what circuits support your extension of the in-furtherance provision or in-furtherance principle to what you're suggesting? I believe this circuit supports it. I believe the Fifth Circuit supports it. In that instance, the defendant was charged with a gun crime, and he suggested to his lawyer, how about if I pretend that my girlfriend had this gun? And the lawyer said, no, you shouldn't do that, and withdrew his representation. The court held that the crime fraud exception applied. In the 2006 case in this circuit, the attorney told the client something neutral. We've got a grand jury subpoena. These are the documents you have to produce. The client then went out and committed the crime of destroying the documents. So in that case, the attorney wasn't suggesting go commit a crime. The attorney wasn't suggesting don't go commit a crime. But that case, as I recall, and I was on the panel, is, okay, tell me which documents they're looking for. Once you tell me which documents they're looking for, I'm going to get rid of them. There was actually no indication in that case, I believe, Your Honor, that the attorney knew that the client was intending to get rid of the documents or directed that the client get rid of the documents. But what's the limiting principle? Don't they have a point where they say any time you consult a lawyer, that's it, crime fraud is triggered? That would be a very dangerous precedent. I don't agree with that, Judge, and the reason is – You've got to tell us what the limiting principle is then. The limit is that, first of all, sometimes the client will not have the intent to commit a crime when the client consults with the attorney. Sometimes the client will consult with the attorney but not need the attorney's advice in furtherance of the crime. Sometimes the client won't go commit the crime. So there are a number of scenarios in which a client could consult with attorney and not use that advice in furtherance of the crime. But a decision has to be made on all three of those aspects that you just mentioned. That's correct. And my concern is if the decision is made post hoc, then you've exposed the lawyer in every one of those scenarios. Is there a way the decision can be made proctor hoc so that the lawyer – there's not this intrusion into the lawyer's confidential communications that necessarily has to occur before the trial judge makes one of those three findings that you just articulated? The decision is always going to be post hoc as to whether the crime-fraud exception applies. So then the lawyer's communications are always fair game in every case under the crime-fraud exception, and then the trial judge investigates and says, oh, sorry, there's nothing here. I shouldn't have allowed this intrusion into your confidential communication. As it stands now, the lawyer's communications are always fair game. There is an attorney-client privilege, but there is a well-grounded exception to that privilege that if the client intends to commit a crime and uses the advice in furtherance of the crime, he doesn't get the privilege anymore. Right, precisely. But what I'm challenging you on, Ms. Morgan, is that it would seem to me to be important that that decision be made as a threshold matter before there's a general fishing expedition, for lack of a better phrase, into the confidential communications between lawyer and client. The decision is already made by the standard itself, and every attorney who practices is aware of what the standard is to accept their communications from attorney-client privilege. Okay, first of all, whose privilege is it? It's the client's privilege. It's not the attorney's privilege? Correct. It seems to me, though, that the path we're going down, the questions that both of my colleagues have asked, is seeking to get from you whether or not there is a limiting principle on the term in furtherance. Because that, to me, seems to be the key. And I haven't heard you articulate that yet. There are instances in which the client will not use the advice in furtherance. There are instances in which the client doesn't need the advice because the client's gotten information from other sources in making the determination as to whether to commit the crime. There are instances in which the client will not commit the crime. Okay, take that last instance out, because if you don't have a crime, you don't have a crime-fraud exception coming in. Correct. But I'm trying to get a handle on what possible communication with a counsel would be left if you had somebody that committed a crime. It seems to me if you committed a crime, then any attorney that that person talked to beforehand, you could subpoena that attorney to find out what the discussion was about. And that's precisely my concern. Not if the client does not use the information that the client gleans from that particular attorney in furtherance of the crime. But how in your limiting principle can a court determine, under the standard that was adopted in last December's case, whether the communication is in furtherance of? I'm having trouble grasping. The question is, is it part of the client's calculus when the client decides on a course of action? How does a court, looking at the communication, determine that? In the very way the court did in this case, by taking the client in camera, by subjecting the client to? No, the client wasn't in camera. I'm sorry, I apologize. The attorney in camera, by subjecting the attorney to a series of questions. The attorney doesn't necessarily know what the purpose of the client's visit was. All he can do is relate what the conversation was about. That's correct. And the court applied the correct standard in this case in determining that there was a reasonable basis to conclude that the crime-fraud exception applied. It's important to remember that we're at the investigative stage here. We're not at trial. We're not in an adversary position. So you're saying if you use the right standard, and we're using, I know opposition counsel doesn't want us to use the 2012 standard, but for purposes of this question, if we use the 2012 standard, if you apply the right standard, you get to the right answer. Correct. So I come to you and I say, I want to go as close to the line as possible legally. I want to be legal for right now, but I want to go as close as possible. I want you to tell me what I can do, what I can't do, what the gray areas are, what I have to do to make the gray areas legal, and when they're not legal. And you look at it, you do the research, and you give me the advice. And I walk out and I say, you know, Morgan gave me the advice, and it wasn't quite what I thought it would be, and screw it. I'm just going to go ahead and go across the line, which I hadn't intended to do before just right now. Is that in furtherance of? Yes. That is in furtherance of because... Why then do I ever want to consult with an attorney? I mean, you're basically saying the minute you consult with an attorney, back to Judge Fisher's point, and you go out and commit a crime, that's it. It's over. It's not protected. And that really seems to go against a whole lot of precedent and law in the American system for over 200 and some years. Well, certainly it's part of our American system that we should not be encouraging people to consult with attorneys so that they can figure out the best way to commit a crime. I'm not trying to figure out the best way. My example was I went in and I wasn't even trying to commit a crime. I was saying I want to go as close to the line as possible. And then after I get your advice, which wasn't quite what I was hoping for, I suppose, I now go out and I say, you know what, I've changed my mind. Screw it. I'm just going to do it. Just going to do it. And you're saying that the crime fraud exception applies there. Well, the issue is it's two parts. It's the intent of the client and whether the client used the advice in furtherance of the crime. So did the client intend to commit a crime, and did the client use the advice in furtherance? You've just driven a truck through the attorney-client privilege. I mean, you might as well not have the privilege. Any time I don't violate the law, as Judge Fisher said, don't have to worry about it because there won't be that much of an investigation. Any time I do violate the law, there is no attorney-client privilege. That can't be the limiting principle. It could be even worse than that because you could be investigating and seeking an indictment and the grand jury chooses not to indict. Yeah, good point. I mean, I guess the concern, it's my sense, speaking only for myself, is your argument is sort of a heads-we-win, tails-you-lose argument that as long as we can pin bad intent on the client, it's open season on the lawyer and anything the lawyer ever said or did with that client. It's not open season, Your Honor, because the court has to examine the lawyer and apply the standard that is already in place, which has been applied for quite some time and effectively applied. Just as it's been applied to documents, it can be applied to attorneys. All right, so I think that might be helpful clarification. And your point is, look, this is just giving the trial court the opportunity to take a look. And then the trial court has to make the determination as to whether the investigation, the communication, was made in furtherance of a crime or fraud. It's giving the grand jury judge the opportunity to take a look. And, yes, then at a later stage in an adversary proceeding, the trial judge can decide whether the evidence is admissible or not admissible. How important is proximity? Temporal proximity, you mean, Your Honor? Temporal proximity. Is temporal proximity important at all? It's a factor, certainly. But in this case, we have ongoing representation by an attorney over a period of years. Then we have a transaction occurring soon thereafter that was a complex commercial transaction involving multi-millions of dollars. And so certainly, even though there was a slight delay from the time of the advice until the transaction, there was temporal proximity. And that is one of the factors that the grand jury judge should consider, but one of several factors. And here the judge who was examining this issue had the ex parte affidavit from the government, which set forth a great deal of information, gleaned from grand jury investigation not available to the appellants, and also had the benefit of examining the attorney in camera. Let's just say, to pick up on that question, in my example where I come to you and say I want to go as close to the line as possible, I do it a year and a half ago, and nothing happens. And then I decide a year and a half later, here's the advice Morgan gave me a year and a half ago. I'm up against it. I've got some problems with the company, and I'm just going to go across the line. Does that infer the crime fraud exception apply there? Your Honor, the issue is did the client intend to commit a crime? I didn't a year and a half ago. I think I understand the distinction that the court is making. The issue is what is the client's intent at the time of the communication with the attorney, versus does the client develop the intent at some later point in time? The first example was I came in, I just want to know what I can and what I can't do. I walk out afterwards and say I wasn't so happy with it, and so I'm just going to violate. I make the decision now. The second example is I intended when I walked out of your office a year and a half ago to give, to do the right thing, not to violate the law, to follow the advice that you gave me. A year and a half later, things change, and I decided to heck with it. I'm going to take my chance. Your Honor, my time has expired. No, go ahead. My understanding of the standard is did the client intend to commit a crime, and did the client use the advice in her event? So in my example, the second example I just gave you, does the crime fraud exception apply? I believe that it does. Okay. Anything else? Thank you. Thank you. Your Honor, as difficult as it may be for me to do this, I'm going to cede my three minutes to my junior counsel. Now, does he owe you one for this? He certainly does. Okay. I'm not sure. We'll see how the questions go. Mr. Comiskey. Yes, sir. Should we not consider this matter recognizing that the lawyer is on record as saying that the crime fraud exception may apply? That was a major issue at the beginning of the matter. We think absolutely not. We think that, in effect, reveals privileged information, and we argued about that, and the district court judge handled it by saying there was nothing in the ex parte affidavit that we didn't see which went to that point, and the district court also said it could mean A or it could mean B. It could mean it might apply or it might not apply, and that's how the district court judge handled it. Well, it's certainly not dispositive, but, again, we're just dealing here with can the examination be undertaken, right? I mean, you'd like to say that, wait a minute, this examination should not even be undertaken, absent some showing of in furtherance, et cetera, and what I'm asking you is why shouldn't the trial judge, in evaluating whether an examination should occur, consider that the lawyer is on record as saying that the crime fraud exception might be implicated? It was actually the lawyer's lawyer, as the court knows. It wasn't the lawyer. It was the lawyer's lawyer. Well, speaking for the lawyer. I understand, and second, and second, that reveals, in our view, privileged information. That's his conclusion, based on the information. Well, you can sue him for that, but that's immaterial as to how the trial judge should handle it. No, and we don't agree with that. We think that's you're not supposed to divulge the privileged information until the government has made their showing. They can't use the privileged information to make the showing. So you're saying the trial judge should pretend that that's not of record? That's, in fact, what the district court judge did here. The district court judge said she did not rely on it. We think that was the correct ruling. That was the correct result. The district court judge can't rely on it. Zolan says that. You can't rely on the privileged information to decide whether you're going to have an in-camera review. You have to rely on other evidence. Then you can listen to the lawyer in-camera or look at the documents in-camera to determine whether the privilege is going to be breached, but you can't use the privileged information in the first instance to determine whether the in-camera examination should occur. I think that's pretty clear from Zolan. If I can respond to the Fifth Circuit case doesn't control here at all. The Fifth Circuit case, you couldn't tell from the facts, but it looked like this was a case where a gun case with a client, the girlfriend changed her testimony. And it looked like when you read it that they went to the lawyer, the lawyer told the witness about perjury, what could be considered perjury, and the lawyer drafted an affidavit for the witness to change her testimony to be helpful to the client. That's inference. That's not an arguable position. He drafted an affidavit based on the discussion, which was used to support a false position to commit perjury, which the witness then recanted and said she had committed perjury in the affidavit. So we don't see that as close to the situation here. And to answer Judge Ambrose's point, the determination is when the client consults the lawyer, not a year and a half later, not six months later. Did he have the intent or she had the intent when the lawyer was consulted, not did something the client thought of later when he's up against, that is Judge Ambrose's hypothetical. And how can the judge, the grand jury judge decide that, answer that question without examining the documents or examining the lawyer? Well, we think, we're not saying you can't have an examination. We're saying you have to have a different standard and you need procedural safeguards. So you have to have a higher standard in our view and somebody else has to be there, i.e., the lawyer for the target or the lawyer for the target so that if the right questions aren't being asked, you don't want a mini trial. We understand no mini trials. But if the right questions aren't being asked, i.e., did you talk about indirect as opposed to direct payments, did you cover the waterfront so that you can determine whether the vice was used in furtherance, that that kind of thing can be picked up. But on this kind of a record, there's no way to respond. And if this information gets released, it goes to the grand jury, it's used to justify an indictment. And as we know under the Supreme Court precedent, once the indictment comes down it's almost impossible to dismiss for grand jury abuse once the indictment is issued. It's very difficult. So the place cards, the safeguards have to be put in now, not with the trial court. Let me ask you a hypothetical and I'll actually give Ms. Morgan a chance to respond to it as well. I come to you and I say, can I do X, Y, Z? And you say, no. I go to Ms. Morgan and I say, I wasn't real happy with the answer you gave me. So I go to another attorney, Ms. Morgan, and I give her the same facts. And she says, yes. Is my communication with you, does the crime fraud exception apply to that if I follow the advice that she gives? And is the crime fraud exception applied to my communication with her? It's an interesting hypothetical. I wouldn't think it applies to either. If the advice was wrong, you haven't followed the advice. If the advice was right, you have followed it. You've set up a paradigm of one was right and one was wrong. It may be a little closer that it's a closer to the edge argument where they may both be a little right and both be a little wrong. But if you think you're following the lawyer's advice, I don't think it's crime fraud. Nobody is going to use a lawyer. You're chilling the right of the privilege which has been around for hundreds of years. Nobody is going to use a lawyer to facilitate a crime? But he's not facilitating a crime. Lawyers get consulted every day. And they never facilitate crimes? Your Honor, if I may. Is the word consigliere unfamiliar to you? But we're not dealing with that here. Maybe we are, maybe we're not. We have to look into it. Isn't that the point? Your Honor, if you're an ethical practitioner, you get consulted every day about the law in one area or another. For instance, I got consulted. But you just put the rabbit in the hat. There are unethical lawyers. There are criminal lawyers out there. It's a very, very tiny percentage of the bar. But there are some that are out there. But that's why you have to have some safeguards to protect the majority against the minority so you don't have crime fraud in every case. And you're undercutting the privilege across the board in the interest of grand jury expediency with a low standard of reasonable basis of suspect. There won't be a privilege. I can't say it any stronger than that. There won't be a privilege. People are going to be chilled in consulting lawyers. There are civil cases, criminal cases, it won't matter. Thank you, Your Honor. Thank you. Ms. Morgan, do you want to take a shot at that? As I understand the court's question. Yeah, I go to Mr. Kaminsky and I say, can I do X, Y, Z? He says, no. I go to you and I give you the same facts. You analyze it and you come up with the answer, yes. I follow your advice. And now I'm under investigation. Does the crime fraud exception apply to my conversation with Mr. Kaminsky? Does the crime fraud exception apply with regard to my conversation with you? As I understand the court's question, you're asking if you ask the lawyer and you go do something different than what the lawyer has advised you to do, which in this case would be Mr. Kaminsky and the hypothetical. I've talked with Mr. Zausmer and we would ask to have additional time to research that issue and then we could submit a short letter to the court within 10 days if that's acceptable. You know, at this point, we're just trying to sort it out. I don't know if my colleague over here is saying, no, let's just try to resolve it now. Because in that situation, I have followed the advice of a good attorney, you, and now I'm under investigation. And, you know, the fact that you're having difficulty answering it, which I think I would too, is supports Mr. Kaminsky's point that the consequences of going your way on saying so many things are in furtherance of and the crime fraud exception applies, it really means in a lot of ways I shouldn't be consulting with an attorney. I just go ahead and do it. Take my chances. Well, I would go to Judge Hardiman's point, which is this notion of conciliary and you consult with someone. Yeah, but that's a different, I mean, that's, we've all seen The Godfather. That's not what this is about. Well, certainly it's a balancing. We want clients to consult with their attorneys, but we don't want to advocate a position in our law that you do so to figure out how to commit a crime or what's the best way to commit a crime. The problem with that is any time a lawyer, an ethical lawyer, gives good advice, an intelligent client knows how to commit a crime, right? Because the good lawyer says, here are the parameters of the law, and the intelligent criminal says, thank you. Now that I know the parameters of the law, I know where and how I'm committing the crime. Yes, but it's a crime. So do we drag the lawyer into that? That's the difficulty. I mean, you know, clearly your office can and should pursue the criminality zealously, but where do we draw the line as to when to drag lawyers in? The same issue has been continually existent with respect to documents. For example, if the same communication were reduced to documents, the same issue would be before the court and the same standard would apply, and the court would reveal that. Which is why you want us to apply Zolan to verbal communication. Correct. Have any other courts done that? I believe the Second Circuit has done that, and this court referred to that opinion with approval in its most recent opinion. Look, if both sides want to respond to this hypothetical that I gave where I consult Mr. Kaminsky and I consult you, one says yes, one says no, why don't you see if you can three pages single spaced by next Tuesday. Very well. By Tuesday at 4 o'clock. I would also ask if you could arrange to have a transcript prepared and to split the cost of this whole argument. It's an interesting case. We'll take the matter under advisement, and I appreciate very much everyone being here. Thank you.